**Affirmed and Opinion filed August 25 , 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00426-CV

### JESSICA ALLEN, Appellant

### V.

### JOSHUA ALLEN, Appellee

**On Appeal from the County Court at Law**
**Waller County, Texas**
**Trial Court Cause No. 12-12-21748**

## O P I N I O N

Jessica Allen appeals from the final decree of divorce ending her marriage to Joshua Allen. In a single issue, she contends the trial court abused its discretion in designating Joshua as the parent with the exclusive right to determine the primary residence of the two children of the marriage, daughter N.A. and son J.A. We affirm.

### *Background*

Jessica and Joshua married in August 2007 and separated in early August

2012.  Upon separating, Jessica and the children moved in with her mother.  On August 6, 2012, the parties signed an agreement under which Jessica would have primary conservatorship of the children and Joshua would not be required to pay child support.[1]  Subsequently, Joshua changed his mind and no longer agreed to those terms.

Jessica filed for divorce on December 12, 2012, and Joshua filed a counter-petition on January 2, 2013.  On January 10, 2013, the trial court entered agreed temporary orders, providing for joint managing conservatorship of the children, designating Jessica as the conservator with the right to determine the children's primary residence, and requiring Joshua to pay child support.  Upon Jessica's motion, the trial court amended its temporary orders to provide specific terms governing Joshua's periods of visitation with the children.  On November 12, 2013, Joshua filed an amended counter-petition requesting that he be appointed sole managing conservator or, in the alternative, that he and Jessica be appointed joint managing conservators with Joshua having the right to determine the children's primary residence.  On December 12, 2013, the trial court held a final trial.  In the resulting decree, the court named both parents as joint managing conservators, awarded Joshua the right to determine the children's primary residence, and ordered Jessica to pay child support.  At trial, Joshua was represented by counsel, Jessica appeared pro se, and a guardian ad litem represented the interests of the children.

During trial, Joshua testified regarding several instances in which he contended Jessica impeded his access to the children.  For example, Joshua recalled a specific instance occurring about two weeks after the separation when he arrived at Jessica's mother's house to pick up the children but was not allowed to

---

[1] This written agreement was admitted into evidence but is not included in the record; however, Joshua testified in detail regarding its contents and execution.

come in and see them or take the children with him. Later that day, police officers informed Joshua that he had been accused of criminal trespass and belligerence at Jessica's residence. Joshua stated that, on another day, he went to N.A.'s school to have lunch with her but was told Jessica had informed the school that neither Joshua nor certain named members of his family should be allowed to interact with or receive information regarding N.A.

Joshua further testified that in July 2013, Jessica texted him to say that she would not be coming to the police station—the court-designated location for visitation exchanges—to transfer the children to Joshua for his period of possession. A police officer at the station accompanied Joshua to Jessica's residence, but Jessica came out yelling at Joshua and refused to relinquish the children. Thirty minutes later, Joshua was arrested by the same officer for the criminal trespass allegation made by Jessica in August 2012. Joshua stated that the charges were later dropped.

Between April to August 2013, Jessica made several reports to Child Protective Services of sexual or other physical abuse of N.A. while in Joshua's custody. CPS investigator Janet Harris testified that she investigated a report of physical abuse by Joshua in August 2013 and ruled out any abuse. She further stated that she saw no cause for concern at either parent's house and believed both were appropriate places for the children to live. CPS investigator Lauren Reid testified that she investigated two allegations that N.A. had been sexually abused and one allegation of negligent supervision. The allegations were merged into one investigation, the results of which were inconclusive. Reid stated that while there was evidence to suggest something may have happened, it could not be determined exactly what happened or who may have been involved, if anyone. At the conclusion of the investigation, the family was referred to counseling or parenting classes. Kim Mathis, executive director of a family crisis center, testified that she

3

received a referral for services to be provided to Jessica and N.A. but that, after an initial intake meeting, neither returned for counseling.

In his testimony, Joshua raised concerns that Jessica would continue to interfere with his visitation if the children continued to live with her, based on her past behavior, repeated reports to CPS, and statements made to Joshua and his family. Joshua's mother testified regarding her relationship with the children, her experience as a daycare provider, and her willingness to help Joshua with the children. Jessica asked Joshua's mother whether she failed to ensure the children were buckled in their seatbelts when being transported and whether she had stripped J.A. from the waist down and stared "at his privates." Joshua's mother denied both allegations.

In her closing remarks, the guardian ad litem stated that she believed both parents were capable of taking care of the children and that both households were safe and adequate for the children. She expressed concerns that Jessica was creating "a big wedge" between Joshua and the children and seemed intent on continuing her feud with Joshua. She further expressed concern that the children were firmly bonded with Jessica and that changing primary custody to Joshua would be a "huge" step for the children but did not see a reason they could not return to a home, Joshua's, where they had lived for five years.

### *Discussion*

In her sole issue, Jessica contends that the trial court abused its discretion in granting Joshua the right to establish the children's primary residence. We review a trial court's determination of conservatorship issues under an abuse of discretion standard. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re Marriage of McNelly*, No. 14-13-00281-CV, 2014 WL 2039855, at *11 (Tex. App.—Houston [14th Dist.] May 15, 2014, pet. denied) (mem. op.). A trial court abuses its

discretion when it acts unreasonably, arbitrarily, or without reference to any guiding rules or principles. *J.A.J.*, 243 S.W.3d at 616. Challenges to the legal or factual sufficiency of the evidence are not separate grounds of error, but instead are relevant factors to consider in assessing whether the trial court abused its discretion. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). In determining whether the trial court abused its discretion because the evidence was legally or factually insufficient, we consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion. *McNelly*, 2014 WL 2039855, at *11. Traditional sufficiency review comes into play with regard to the first question, and with regard to the second question, we determine whether the trial court made a reasonable decision. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *R.T.K.*, 324 S.W.3d at 900.

In reviewing for legal sufficiency, we examine the entire record, considering evidence favorable to the finding if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *Thornton v. Cash*, No. 14–11–01092–CV, 2013 WL 1683650, at *10 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (mem. op.). In addition, we indulge every reasonable inference that would support the finding at issue. *Id.* The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* In reviewing factual sufficiency, we must examine the entire record, considering evidence both in favor of and contrary to the challenged findings. *Id.* at *11. We may set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

When a court appoints both parents as joint managing conservators, it must designate to one of them the exclusive right to determine the child's primary

5

residence, with or without geographic restrictions. Tex. Fam. Code § 153.134(b)(1). The primary consideration is the best interest of the child when determining issues of conservatorship or possession of and access to the child. Tex. Fam. Code § 153.002; *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000); *see also Lenz v. Lenz*, 79 S.W.3d 10, 14–16 (Tex. 2002) (discussing factors often relevant in a best-interest analysis); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (same). It is the public policy of the state to (1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; (2) provide a safe, stable, and nonviolent environment for the child; and (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage. Tex. Fam. Code § 153.001.

In support of her contention that the trial court abused its discretion in granting Joshua the right to determine the children's primary residence, Jessica emphasizes that she had primary custody of the children before the court entered the final decree, Joshua signed an agreement giving her that right, and she reported abuse to the authorities. She further argues that the trial court abused its discretion in not acting on the parties' prior agreement and in changing the status quo in the absence of a compelling reason. She additionally contends that Joshua failed to present any evidence of bad acts on her part that would support awarding Joshua the right to designate primary residence. Jessica does not, however, offer any authority or cognizable legal argument in support of her assertions that the trial court was bound to continue the status quo or that evidence of her bad acts was required before Joshua could be awarded the right in question. *See* Tex. R. App. P. 38.1(i) (requiring an appellant to include argument and pertinent authority in its brief); *In re C.D.B.*, No. 14-13-00718-CV, 2015 WL 1405921, at *5 (Tex. App.— Houston [14th Dist.] Mar. 24, 2015, no pet.). Nothing is presented for our review

6

as to these arguments.

Parties to a divorce proceeding may enter a written agreement concerning conservatorship and possession of a child. *See* Tex. Fam. Code § 153.007. However, when one party revokes consent before the trial court enters its final orders, the prior agreement on its own is no longer a proper basis for such orders. *See Woody v. Woody*, 429 S.W.3d 792, 796 & n.5 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding where party withdrew consent to agreement regarding child support prior to rendition of the judgment, trial court erred by incorporating that agreement into the final judgment); *In re M.A.H.*, 365 S.W.3d 814, 820 (Tex. App.—Dallas 2012, no pet.) (noting that statutes concerning unmediated agreements on child support, conservatorship, and possession of children do not contain language stating such agreements are irrevocable). Even if Joshua had not withdrawn his consent to the agreement, the trial court was not bound to follow the agreement unless it determined that it was in the children's best interest. *See* Tex. Fam. Code § 153.007 (authorizing parties to enter agreed parenting plan but providing court shall render an order in accordance with such a plan only if the court finds the agreed plan is in the child's best interest); *In re V.L.K.*, No. 02–10–00315–CV, 2011 WL 3211245, at *4 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op.) ("[E]ven agreed-to matters of conservatorship or possession are subject to the trial court's approval after considering the child's best interest.").[2]

Here, not only did Joshua revoke his consent to the agreement, but the trial court also determined that the best interest of the children was served by

---

[2] It is undisputed that the agreement between the parties in this case was not a mediated settlement agreement, which trial courts generally are bound to follow in rendering a judgment, provided the agreement complies with section 153.0071(d) of the Family Code. *See In re Lee*, 411 S.W.3d 445, 458-59 (Tex. 2013).

appointing Joshua and not Jessica as the parent with the right to determine the primary residence. A trial court has broad discretion to decide the best interest of children in matters involving custody, visitation, and possession. *E.g., Popek v. Popek*, No. 14–10–00201–CV, 2011 WL 2566185, at *5 (Tex. App.—Houston [14th Dist.] June 30, 2011, no pet.) (mem. op.). The trial court is best able to observe and assess the witnesses' demeanor and credibility and to sense what may not be apparent merely from reading the record on appeal. *Id.* Therefore, we should defer to the trial court's resolution of underlying facts and to credibility determinations that may have affected its decision, and should not substitute our judgment for that of the trial court. *Id.*

As set forth in detail above, the record reveals there was evidence to support the trial court's decision. At trial, the CPS workers testified and the appointed guardian for the children opined that both parents were capable of caring for the children and providing a safe home with food, clothing, and shelter. Further evidence, however, established that Jessica frequently had prevented Joshua from seeing his children. Additionally, Jessica reported Joshua for sexual and physical abuse of N.A. and continued to do so despite each allegation being dismissed upon investigation; she even alleged at trial that Joshua's mother had behaved inappropriately. The trial court reasonably may have concluded that Jessica's actions were aimed at preventing Joshua's access rather than preventing abuse of the children.

At the conclusion of trial, the trial judge emphasized that Jessica had persisted and would likely continue to persist in preventing the children from having any chance at a relationship with their father. The judge further expressed doubt as to whether, if she were given the right to determine the children's primary residence, Jessica would ever allow the children to have a good relationship with Joshua. Such persistent alienation of the other parent can be a guiding

consideration in making possession and access determinations. *See, e.g., In re J.W.H.*, No. 14-09-00143-CV, 2010 WL 1541679, at *6-7 (Tex. App.—Houston [14th Dist.] April 20, 2010, no pet.) (mem. op.) (affirming trial court's modification order changing which parent had primary custody based in part on evidence parent who originally had primary possession had repeatedly attempted to interfere with other parent's periods of possession); *In re Marriage of Chandler*, 914 S.W.2d 252, 254 (Tex. App.—Amarillo 1996, no writ) (affirming order divesting parent of managing conservatorship due in part to interference with other parent's relationship with child).

Indulging every reasonable inference that would support the trial court's finding, we conclude that the trial court had sufficient evidence to support its decision. The court did not act unreasonably, arbitrarily, or without reference to any guiding rules or principles by naming Joshua the conservator with the right to determine the children's primary residence; therefore, the trial court did not abuse its discretion. *See J.A.J.*, 243 S.W.3d at 616.

Accordingly, we overrule Jessica's sole issue and affirm the trial court's judgment.


/s/     Martha Hill Jamison
          Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby.

9