**Affirmed and Memorandum Opinion filed April 19, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00028-CV

---

## MICHAEL JUSTIN JACOBS, Appellant

### V.

## ADANA ALT, Appellee

---

**On Appeal from the 395th District Court
Williamson County, Texas
Trial Court Cause No. 10-0968-F395**

---

## M E M O R A N D U M   O P I N I O N

Appellant Michael Justin Jacobs ("Father") appeals from the trial court's final order providing for conservatorship, child support, and possession of and access to his minor daughter. Father argues that the trial court erred in giving appellee Adana Alt ("Mother") the exclusive right to designate the child's primary residence and in excluding two pieces of evidence. We conclude that the trial court did not abuse its discretion in granting Mother the exclusive right to designate the child's primary residence and that Father did not preserve error in the

trial court regarding the exclusion of the evidence.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother filed a petition to adjudicate parentage as to her daughter ("Daughter"), seeking a final order regarding conservatorship and possession of and access to Daughter.  In his answer, Father admitted paternity.  After Father did not appear at trial, the trial court rendered a final order regarding conservatorship, child support, possession of and access to Daughter ("First Order").

Father then filed a petition for a bill of review, requesting that the trial court set aside the First Order because Father did not receive notice of the trial on which the First Order was based.  The trial court granted the bill of review as to the First Order, though the trial court did not set aside temporary orders that it previously had signed.[1]  The trial court subsequently held another trial and made an oral pronouncement of judgment.

Father learned that Mother's brother, a registered sex offender, was about to be released from prison.  Father filed a request for a temporary restraining order to prevent Mother's brother from coming within five hundred feet of Daughter and moved to reopen the trial evidence.  The trial court granted the restraining order, an order granting injunctive relief, and Father's request to reopen the evidence.

While the injunction was in place, Daughter told Father that she had been in the presence of Mother's brother.  After an initial denial, Daughter repeated this

---

[1] In the statement-of-facts section of his brief, Father states that the trial court granted the bill of review in October 2013, and Mother has not contradicted this statement.  Therefore, we accept as true that the trial court granted the bill of review in October 2013, and set aside the First Order. *See* Tex. R. App. P. 38.1(g) (stating that "[i]n a civil case, the court will accept as true the facts stated unless another party contradicts them"); *Johnson v. Office of Attorney General of Texas*, No. 14-11-00842-CV, 2013 WL 151622, at *1 (Tex. App.—Houston [14th Dist.] Jan. 15, 2013, no pet.) (mem. op.).

statement to an interviewer from Child Protective Services. The trial court issued temporary orders giving Father the exclusive right to designate Daughter's primary residence. The trial court ordered that Daughter undergo an interview at the Child Advocacy Center and continue counseling with the counselor that the Daughter had been seeing. During the interview at the Child Advocacy Center, Daughter did not indicate that she had been sexually abused.

Daughter's counselor testified that she did not believe the child had been around Mother's brother. The counselor also testified that Daughter wanted to live with Mother and that granting Father the exclusive right to designate the child's primary residence was harmful for Daughter. A Child Protective Services representative testified that Child Protective Services had no qualms about returning the child to Mother.

The trial court signed a final order regarding conservatorship, child support, possession of and access to Daughter. In that order, the trial court granted Mother the exclusive right to designate Daughter's primary residence. Father now appeals from the order.[2]

## ISSUES AND ANALYSIS

### A. Is the trial court's order void?

As a threshold matter, we address Father's argument that the order from which Father appeals is void. In his fourth issue, Father argues that this order is void because, according to Father, the trial court issued the order based on Father's petition to modify the First Order, yet the First Order did not exist when the trial

---

[2] The Supreme Court of Texas transferred today's case from the Third Court of Appeals to this court. In cases transferred by the high court from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court. Tex. R. App. P. 41.3.

court allegedly modified it because the trial court set aside the First Order in granting Father's bill of review.

In April 2010, Mother filed a petition to adjudicate parentage, in which she sought a final order regarding conservatorship and possession of and access to Daughter. In April 2011, after Father did not appear at trial, the trial court rendered the First Order. Father filed a petition to modify the First Order in November 2011. Sixteen months later, in March 2013, Father filed a petition for bill of review in which he asked the trial court to vacate the First Order. The trial court granted the bill of review as to the First Order.[3] In October 2013, the trial court held another trial and made an oral pronouncement of judgment. Father then filed a motion to reopen evidence and the trial court granted the motion.

After hearing additional evidence, the trial court signed the final order from which Father appeals. This order, signed in August 2014, is entitled "Order in Suit to Modify Parent-Child Relationship." The title indicates that the trial court rendered the order in a modification suit under Chapter 156. *See* Tex. Fam. Code Ann. § 156.001, *et seq*. (West, Westlaw through 2015 R.S.). Nonetheless, we give effect to the substance of the order rather than the title or form of the order. *See Curry v. Harris Cty. Appraisal Dist.*, 434 S.W.3d 815, 819–20 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In the order, the trial court does not purport to modify a prior order providing for conservatorship, child support, or possession of and access to Daughter, nor does the trial court address any of the grounds on which such an order may be modified. *See* Tex. Fam. Code Ann. § 156.101, *et seq*. (West, Westlaw through 2015 R.S.). The trial court does not refer to Father's petition to modify, nor does the court purport to rule on this petition. We conclude

---

[3] As noted in footnote 1 above, under Texas Rule of Appellate Procedure 38.1(g), we accept as true that the trial court granted the bill of review in October 2013, and set aside the First Order. *See* Tex. R. App. P. 38.1(g); *Johnson*, 2013 WL 151622, at *1.

that the substance of the order is not an order rendered in a modification suit, rather it is an order rendered to take the place of the First Order after the trial court granted the bill of review and set aside the First Order. *See Curry*, 434 S.W.3d at 819–20. Father argues that because the trial court granted his request to set aside the First Order, there was no order to modify and therefore the trial court's order, which he characterizes as an order granting modification, is void. Without addressing whether an order in a modification suit would be void if there were no prior order to modify, we conclude that Father's argument lacks merit because the order is not a modification order. Once the trial court granted Father's bill of review and set aside the First Order, the next step was to retry the issues determined in the First Order and issue a new order. *See Kiefer v. Touris,* 197 S.W.3d 300, 302 (Tex. 2006) (per curiam). The trial court's order did not modify an order that had been set aside. *See Curry*, 434 S.W.3d at 819–20. Thus, we overrule Father's fourth issue.

## B. Did Father preserve error on his argument that the trial court improperly excluded from evidence a telephone call he recorded between Mother and Daughter?

In his first issue, Father contends the trial court abused its discretion by excluding from evidence a phone call he recorded between Mother and Daughter. Father asserts this evidence proved Mother was coaching the child. The trial court stated it would exclude this evidence because it was obtained in violation of state and federal wiretap statutes. On appeal, Father argues that he obtained the evidence legally because he had vicarious consent to record the conversation. The record does not contain an offer of proof.

To preserve error on the ground that evidence was improperly excluded, a party must inform the trial court of the substance of the evidence by an offer of proof, unless the substance was apparent from the context. *See* Tex. R. Evid.

5

103(a)(2); *Gipson-Jelks v. Gipson*, 468 S.W.3d 600, 606 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Father did not make an offer of proof showing the substance of the evidence he sought to introduce, and the substance of this evidence was not apparent from the context. Thus, Father did not preserve error on his complaint. *See Gipson-Jelks*, 468 S.W.3d at 606. We overrule Father's first issue.

## C. Did Father preserve error on his argument that the trial court erred in excluding expert testimony that Daughter was afraid of her uncle?

Father asserts in his second issue that the trial court erred in excluding expert testimony from Dr. Kelley Baker regarding an examination of Daughter by a psychologist, Dr. Mark White. At trial, Father asked Dr. Baker if coaching a child to lie fell under the category of terrorizing a child. Father then asked Dr. Baker how she would recommend proceeding to protect Daughter from emotional abuse in this case. Dr. Baker responded that she had not met Daughter, so it would be very hard for her to say what would be in Daughter's best interest. Dr. Baker began to give a general opinion about children, but Mother objected and the trial court sustained the objection.

Father then asked how Dr. Baker recommended keeping a child from being "traumatized" if, hypothetically, a child had been coached to lie about being around "her pedophile uncle," and then re-coached. Mother objected on the grounds that it was "inappropriate" for Father to "create hypotheticals that mirror [Daughter]" in an attempt to get a diagnosis out of a doctor who had never met the child. Father's counsel stated that Dr. Baker had spoken with Dr. White and that Daughter told Dr. White she was afraid of her uncle. Without ruling on Mother's objection, the trial court decided to take a recess. After the recess, the trial judge stated that he believed Father had violated a court order by taking the child to see Dr. White. The parties made arguments to the trial court regarding whether or not

6

taking the child to see Dr. White violated the trial court's order. The trial court then directed Father to continue questioning Dr. Baker, and Father passed the witness.

On appeal, Father asserts that the trial court erred in excluding Dr. Baker's testimony because the trial court's order did not prevent Father from taking the child to see Dr. White for an examination or, in the alternative, Father had the authority to take the child to see Dr. White for a psychological evaluation under Family Code section 32.005. Father argues that the trial court should have allowed Dr. Baker to offer suggestions on how to proceed with therapy.

Father does not identify the specific ruling that he is challenging on appeal. To the extent Father takes issue with Mother's objection that her hypothetical question to Dr. Baker was inappropriate, the trial court did not rule on that objection. The trial court took a recess, but did not rule that Father's question was impermissible. After the recess, Father passed the witness. There is no trial court ruling for this court to review. *See City of Galveston v. Galveston Mun. Police Ass'n*, 57 S.W.3d 532, 540 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). To the extent Father takes issue with the trial court's ruling on Mother's objection to Dr. Baker beginning to give a general opinion about protecting children from emotional abuse, Father did not make an offer of proof showing the substance of the evidence he sought to introduce, and the substance of this evidence was not apparent from the context. Father did not preserve error in the trial court on his second issue. *See* Tex. R. App. P. 33.1(a); *City of Galveston*, 57 S.W.3d at 540; *Gipson-Jelks*, 468 S.W.3d at 606. Father's second issue is overruled.

## D. Did the trial court abuse its discretion in designating Mother as the parent with the exclusive right to designate Daughter's primary residence and in granting Mother unsupervised access to Daughter?

In his third issue, Father asserts the trial court abused its discretion by

designating Mother as the parent with the exclusive right to designate the Daughter's primary residence, in granting Mother other exclusive rights,[4] and in allowing Mother unsupervised access to Daughter. In particular, Father argues that Daughter is not safe with Mother because the evidence shows the child was around a registered sex offender, Mother struck Daughter in the mouth, and Mother drinks excessive amounts of alcohol.

In determining issues of conservatorship and possession and access, the primary consideration is always the best interests of the child. *See* Fam. Code Ann. § 153.002 (West, Westlaw through 2015 R.S.); *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). We review a trial court's determination of conservatorship and possession and access issues under an abuse-of-discretion standard. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Allen v. Allen*, 475 S.W.3d 453, 456 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules of principles. *See Allen*, 475 S.W.3d at 456. Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *Id.*

When a court appoints both parents as joint managing conservators, it must designate one of them as the conservator who has the exclusive right to determine the child's primary residence. Tex. Fam. Code § 153.134(b)(1) (West, Westlaw through 2015 R.S.). Texas public policy is to (1) assure that children will have

---

[4] Father asserts in his issue statement that the trial court abused its discretion in granting Mother "other exclusive rights." Father does not elaborate on this statement in his briefing by explaining which other rights he is challenging or why. Father has not provided any analysis or citation to legal authority explaining this challenge. Even construing Father's brief liberally, we cannot conclude Father has adequately briefed this issue and therefore it is waived. *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

8

frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, (2) provide a safe, stable, and nonviolent environment for the child, and (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their relationship. Tex. Fam. Code Ann. § 153.001(a) (West, Westlaw through 2015 R.S.); *Allen*, 475 S.W.3d at 457. A court may use the following non-exhaustive list of factors to determine the child's best interests: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *Cain v. Cain*, No. 14-07-00114-CV, 2007 WL 4200638, at *3 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (mem. op.).

During the time period where the injunction was in place, Daughter stated to Father that she had seen Mother's brother and that they played a game of "princess tag." In interviews with Child Protective Services, the child initially stated she had not seen Mother's brother and then stated that she had seen him. A Child Protective Services worker testified at a hearing on temporary orders that Child Protective Services had concerns about Mother's family because the family did not believe Mother's brother was guilty of the aggravated-sexual-assault-of-a-child offense of which he was convicted. At the same hearing, Child Protective Services expressed concerns that the child witnessed fighting between Father and his wife.

The record contained evidence that the police were called to respond to an incident of domestic violence between Father and Father's wife while Daughter was present.

The trial court issued temporary orders granting Father the exclusive right to designate Daughter's primary residence and awarded Mother possession of and access to Daughter with the requirement that Daughter not be in the presence of Mother's parents or brother. The trial court ordered Daughter to undergo an interview at the Child Advocacy Center to determine whether any abuse had occurred. The trial court also provided specific orders for Daughter to continue counseling with the private counselor that she already had been seeing. In her interview with the Child Advocacy Center, Daughter denied having been around Mother's brother. During this time, Father took Daughter to see a second counselor, in addition to taking Daughter to her established counselor and the Child Advocacy Center interview.

At the next hearing, the trial court concluded Father's actions in taking the Daughter to a second counselor violated the trial court's order that Mother had the exclusive right to consent to psychological treatment. The trial court also concluded that this action was not in Daughter's best interests because the parties had agreed Daughter's existing counselor was a neutral party who had established a rapport with Daughter over a long period of time. The trial court expressed concern that taking Daughter to multiple counselors could harm Daughter.

Daughter's counselor testified that the counselor addressed the issue of Mother's brother with Daughter and that the child said she had lied about having contact with him because she felt shy and nervous. Daughter denied any contact with Mother's brother and could not describe him. Daughter stated that she knew about Mother's brother because Mother's mother had talked about him.

Daughter's counselor testified that the child disclosed that Mother asked the child not to discuss Mother's brother. When asked about "princess tag," Daughter stated that she played "princess tag" with her grandfather. Daughter's counselor testified that she did think Mother had coached Daughter not to talk about Mother's brother, but the child's counselor said she did not think Daughter had ever been around Mother's brother. Daughter's counselor testified that granting Father the exclusive right to designate Daughter's primary residence could have a serious emotional impact on the child because Daughter would be away from her routine, her school, and Mother. Daughter's counselor said that Daughter wanted to live with Mother and was asking the counselor why she had to live with Father.

A Child Protective Services representative stated Child Protective Services did not have any concerns about returning Daughter to Mother as long as Mother's mother did not have unsupervised contact with the child and Mother continued taking protective parenting classes. Mother admitted she slapped Daughter in the mouth on one occasion while they were out in public and Daughter cursed. The incident occurred over a year before trial. Child Protective Services was aware of the incident but did not have any concerns at the time of trial about that conduct.

The record also revealed that Father hired a private investigator to search Mother's trash. Mother's trash contained wine bottles. Mother admitted that she drinks one to two glasses of watered-down wine four nights per week.

The trial court found that Daughter had been around Mother's brother on one occasion, but that after that occasion Mother successfully kept the child away from all of her extended family members as requested by the trial court. Although the trial court found Mother had allowed Daughter to be in Mother's brother's presence once, the record revealed that Mother had taken protective parenting classes since that time and the child's counselor, as well as the representative from

11

Child Protective Services testified that Mother was protecting the child. Neither Daughter's counselor nor the Child Protective Services representative had any concerns about placing Daughter in Mother's care or allowing Mother unsupervised access to Daughter. While the record does contain evidence showing that Mother did not always make the best parenting decisions, the record also contains evidence that Father also made detrimental choices. In addition to engaging in domestic violence while Daughter was residing at his home, Father was arrested for driving while intoxicated shortly after completing rehabilitation for alcoholic addiction. Even though the trial court found Mother exposed Daughter to Mother's brother on one occasion, the record evidence supports the trial court's determination that Mother could provide a safe and stable environment for the child. Accordingly, the record evidence necessarily supports the trial court's determination that Mother could have unsupervised access to Daughter.

The record contains some evidence that Father was less willing to share in the rights and duties of raising Daughter. First, after the trial court ordered the child to continue in counseling with her established counselor and complete an interview at the Child Advocacy Center, Father took Daughter to a new therapist without consulting Mother, even though Mother had the exclusive right to consent to psychological treatment at that time. Both parties acknowledged that seeing fewer counselors was better for Daughter. Second, while Father had temporary custody of the child, Father did not make all efforts possible to allow Daughter to see Mother. The trial court indicated that Mother should have visitation during Father's temporary custody, but the trial court did not order a specific amount. Arranging visitation was difficult because Mother and Father lived so far apart. But, Father did not work with Mother to allow visitation, even on the occasions Father had to make long drives to take the child to see a counselor located in the

city where Mother resided. Finally, Father spent a significant amount of money hiring a private investigator to go through Mother's trash, even though Father was behind on child support. *See Ayala v. Ayala*, 387 S.W.3d 721, 730–31 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (considering father's history of failure to pay child support in custody determination). In terms of providing the child with consistency and stability, the record revealed that Mother had been involved in the child's life since birth and was consistently employed whereas Father had held many jobs throughout the child's life, had an unstable marriage, and had been involved in the child's life inconsistently. Daughter's counselor opined that awarding Father the exclusive right to designate the child's primary residence would cause Daughter emotional harm because of the interruption to the child's routine. The child's counselor also testified that Daughter wanted to live with Mother.

After reviewing the record, we conclude that the trial court did not abuse its discretion in granting Mother the exclusive right to designate Daughter's primary residence or in allowing Mother unsupervised access to Daughter. *See Allen*, 475 S.W.3d at 456–58; *Cain*, 2007 WL 4200638, at *4. Father's third issue is overruled.

## CONCLUSION

The trial court's order is not void.  Father did not preserve error on his complaints that the trial court improperly excluded evidence.  The trial court did not abuse its discretion in granting Mother the exclusive right to designate Daughter's primary residence.  We affirm the trial court's order.


/s/    Kem Thompson Frost
       Chief Justice


Panel consists of Chief Justice Frost and Justices Christopher and Donovan.

14