

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-21-00310-CV

IN THE INTEREST OF C.M.I., C.M.I., AND C.C.I., CHILDREN

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 27741, Honorable Dan Mike Bird, Presiding

December 14, 2022

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, Mother, appeals the trial court's order modifying the parent-child relationship.[1]  In her sole issue, Mother contends that the trial court abused its discretion by modifying the decree of divorce.  We affirm the trial court's modification order.

---

[1] To protect the privacy of the parties involved, we refer to the appellant mother as "Mother," the appellee father as "Father," and the children as "Carey," "Chrissy," and "Craig."  *See* TEX. FAM. CODE ANN. § 109.002(d).

## BACKGROUND

Mother and Father finalized their divorce on May 31, 2017. The trial court approved their agreement to be joint managing conservators with neither party being named the primary conservator, a geographic restriction to Wilbarger County, and custody shared on a "50/50" and week-to-week basis. In October of 2019, Mother filed a suit to modify the decree of divorce requesting that she be appointed the conservator with the right to designate the primary residence of the children, she be afforded the exclusive right to make educational decisions regarding the children, and Father be given standard possession. Father filed a counter-petition to modify seeking appointment as primary conservator. In addition, Father requested that the terms and conditions for access to or possession of the children be modified to provide him the ability to impose reasonable disciplinary measures during his possession without interference by Mother and that Mother's phone contact with Father and the children be limited during his periods of possession. Both petitions were tried to the bench in April of 2021.

In support of her request to be appointed as the primary conservator of the children, Mother requested the trial court interview the children because Carey and Chrissy expressed a desire to live primarily with her and she wanted the children kept together for Craig's emotional stability. Mother's evidence focused on Father's behavior at the children's sporting events, Craig staying at Father's home alone, Father's failure to safely store a gun in his home while Craig is in his possession, an incident where a gun discharged while Father and Chrissy were traveling home from hunting, and Father's text message in August of 2020 requesting that Mother come and get the children because "he was done" with them.

2

Father supported his claim for primary conservatorship of the children by presenting evidence that Mother was alienating the children from him by undermining his discipline, interfering with his possession of the children, failing to allow the children to speak to him at the children's activities, withholding his phone calls to the children, making disparaging comments about him to the children, and sharing screenshots of his text messages with Carey.

Through her testimony, Mother acknowledged that her relationship with Father is contentious, and this is borne out in numerous text messages exchanged between the parties and admitted into evidence.[2] Mother denies undermining Father's relationship with the children and maintains she has done nothing to try and pit the children against him. According to Mother, Father has caused his alienation from the children because of his bad temper and anger issues.

The trial court issued its modification order. Under this order, Mother and Father continued as joint managing conservators, but Father was designated the primary managing conservator of Craig. The court maintained the "50/50" alternating seven-day periods of possession of Carey and Chrissy during the school year but fashioned a custom possession schedule that allows all three children to be together on weekends, holidays, and summer.[3]

---

[2] The trial court admitted over 240 pages of text messages between the parties covering the period from March 8, 2018, through February 4, 2021.

[3] The order is entitled "Order in Suit to Modify Parent-Child Relationship and Order on Motion for Reconsideration." The order also includes provisions establishing a geographic restriction, injunctive relief, curfew, counseling, child support, and health insurance, but those provisions of the order have not been challenged on appeal.

Upon Mother's request, the trial court entered findings of fact and conclusions of law in support of its order. Among other things, the trial court found that: (1) since the prior order, there has been a pattern of parental alienation whereby Mother has taken steps to alienate the children from Father and has successfully alienated Carey from Father; (2) there is evidence of a history or pattern of disparaging remarks by Mother about Father in front of and around the children; (3) there is evidence of a history and pattern of Mother interfering with Father's possession of the children through excessive communications and contact with the children in a manner that negatively impacts his possession; (4) a material change of circumstances has occurred and it is in the best interest of the children that the parties be appointed joint managing conservators with Father having the right to designate the primary residence of Craig and to make decisions concerning the children's education and medical treatment; and (5) it is in the best interest of the children that the parties have a custom possession order, with Father and Mother having possession of Carey and Chrissy on a 50/50 basis, with weekly exchanges occurring at 6:00 p.m. every Sunday, and Mother having possession of Craig on alternating weekends to match the weeks she has possession of Carey and Chrissy.

Mother timely filed her appeal.

## APPLICABLE LAW

A trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession. *In re A.M.,* 604 S.W.3d 192, 196 (Tex. App.—Amarillo 2020, pet. denied). Accordingly, we review a decision to modify conservatorship for an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451

4

(Tex. 1982). A trial court may modify a conservatorship order if modification would be in the best interest of the child and the circumstances of the child, a conservator, or another party affected by the order have materially and substantially changed since the date of the rendition of the prior order. TEX. FAM. CODE ANN. § 156.101(a)(1)(A).[4] We will not disturb a trial court's decision in a modification case unless the complaining party shows a clear abuse of discretion, meaning the trial court acted in an arbitrary and unreasonable manner or without reference to guiding principles. *In re A.M.,* 604 S.W.3d at 196–97. In our review of a modification order under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Id.* at 197. An appellate court applies a two-prong analysis when it determines whether legal or factual insufficiency has resulted in an abuse of discretion: (1) whether the trial court had sufficient information upon which to exercise its discretion, and (2) whether the trial court erred in applying its discretion. *Id.* The sufficiency review is related to the first inquiry. If it is revealed in the first inquiry that there was sufficient evidence, then we must determine whether the trial court made a reasonable decision, and that involves a conclusion that the trial court's decision was neither arbitrary nor unreasonable. *Id.* The trial court's exercise of discretion will withstand appellate scrutiny unless clearly abused. *In re A.D.T.,* 588 S.W.3d 312, 319 (Tex. App.—Amarillo 2019, no pet.).

Because of the fact-intensive nature of reviewing custody issues, an appellate court must afford great deference to the factfinder on issues of credibility and demeanor

---

[4] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

because the child's and parents' behavior, experiences, and circumstances are conveyed through words, emotions, and facial expressions that are not reflected in the record. *Chavez v. Chavez,* 148 S.W.3d 449, 458 (Tex. App.—El Paso 2004, no pet).

In determining conservatorship and possession issues, the best interest of the child shall always be the primary consideration. § 153.002. We review a trial court's best-interest finding by using the well-established *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[5]

## ANALYSIS

In her sole issue, Mother contends that the trial court abused its discretion in modifying the decree of divorce "in the manner in which it was modified." In her briefing summary, Mother identifies three areas where she contends the trial court abused its discretion: conservatorship, rights and duties, and visitation. Specifically, Mother argues that (1) "no evidence existed to show that naming [Father] as the person to designate Craig's primary residence was in his best interest[,]" (2) "none of the testimony or evidence shows that [Mother] attempted to alienate the children from their father[,]" and (3) "no testimony was elicited in the final hearing regarding any issues with the standard possession order regarding holiday and summer visitation."

---

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.* In the context of a custody modification, other factors to consider include the child's need for stability and the need to prevent constant litigation. *In re V.L.K.,* 24 S.W.3d 338, 343 (Tex. 2000).

The trial court heard testimony about the parents' substantial difficulties in co-parenting, communicating with each other, and handling the children's activities. Mother testified that Father is unable to control his temper and has anger issues. Mother identified Father's behavior at the children's ballgames as problematic and cited Father being banned from attending sporting events for a year at the Boys and Girls Club. The trial court also heard testimony regarding several instances in which Mother alleged that Father jeopardized the safety of the children. Another incident that caused Mother concern was when, in August of 2020, she received a phone call from Father's wife during Father's visitation with the children requesting that Mother come and pick up the children.

Father's evidence centered on Mother's attempts to alienate his children from him, particularly the oldest daughter, Carey. Father testified that he was rarely notified regarding his children's activities. In Father's view, Mother generally made it difficult for him to communicate with any of the children when they are in Mother's possession. The trial court also heard evidence about Mother undermining Father's discipline when the children were in his possession.

The trial court had before it evidence indicating that placing Craig in the home with the most structured and disciplined environment was in his best interest. The trial court was entitled to conclude that Father would be a stabilizing influence and that he did not use tactics designed to manipulate the children. As sole judge of the weight and credibility of the evidence, the trial court could reasonably conclude that Father was the parent best suited to provide such an environment. *See Reisler v. Reisler,* 439 S.W.3d 615, 620 (Tex. App.—Dallas 2014, no pet.).

7

While Mother produced testimony raising concerns of safety issues, it is a matter for the trial court's discretion to balance the concerns raised by each parent. *See In re A.M.*, 604 S.W.3d at 199. It is not our role to rebalance a decision that falls within the trial court's discretion. Deferring to the trial court's assessment of the credibility and weight of the evidence, we conclude that the record includes sufficient evidence from which the trial court could have reasonably concluded a material and substantial change of circumstances had occurred since the 2017 decree of divorce, and that the modification was in the best interest of the children. *See* § 156.101(a)(1); *Holley*, 544 S.W.2d at 371–72.

Moreover, the evidence before the trial court lends more than adequate support to the conclusion that Mother engaged in actions designed to alienate the children from Father. Poisoning a child's mind against a parent is not in the child's best interest. *Allen v. Allen*, 475 S.W.3d 453, 458 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("[P]ersistent alienation of the other parent can be a guiding consideration in making possession and access determinations."); *In re Marriage of Chandler,* 914 S.W.2d 252, 254 (Tex. App.—Amarillo 1996, no writ) ("[C]hanges which may injuriously affect the child's best interest" include "poisoning the child's mind against a parent . . . .").

Further, the evidence sufficiently supports the trial court's decisions to name Father primary custodian and award him the exclusive right to make educational and medical decisions. When the evidence demonstrates that the parties are experiencing difficulty in effectively co-parenting, communicating, or reaching shared decisions, a trial court is justified in selecting one parent as an exclusive decision-maker to avoid conflict. *See Coburn v. Moreland*, 433 S.W.3d 809, 828 (Tex. App.—Austin 2014, no pet.) (where

8

parties had ongoing conflicts regarding child's educational needs and activities, court did not abuse its discretion in selecting one parent as exclusive decision-maker). Because some evidence of a substantive and probative character exists to support the trial court's decision, we hold that the trial court did not abuse its discretion by finding that it was in the best interest of Craig that Father be appointed as the person who determines his primary residence and giving Father the exclusive right to make decisions concerning the children's education and medical treatment.

A standard possession order is presumed to be in the best interest of a child. § 153.252. In determining whether to enter a nonstandard possession order, a court may consider the following factors: "(1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor." § 153.256. The nonstandard schedule ordered by the trial court was tailored to accommodate the seven-day possession schedule previously agreed to by the parties and provided that Mother's visitation with Craig will occur on alternating weekends to match the seven-day periods that she has possession of Carey and Chrissy. We conclude that sufficient evidence rebutted the presumption that a standard order was in the children's best interest and supported the trial court's fashioning an order that gives both parents the opportunity for significant periods of time with their children and avoids some number of contentious and disruptive transfers of the children between the parties. Because the evidence supports the trial court's findings, we discern no abuse of discretion in the trial court's custom possession order. *See In re W.B.B.,* No. 05-17-00384-CV, 2018

Tex. App. LEXIS 5403, at *11–14 (Tex. App.—Dallas July 17, 2018, no pet.) (mem. op.) (week-on-week-off possession schedule not an abuse of discretion).

Mother complains on appeal that "no testimony was elicited in the final hearing regarding any issues with the standard possession order regarding holiday and summer visitation." However, at the hearing on the motion to reconsider, Mother's counsel advocated for changes to the standard holiday and summer visitation schedules. Because Mother requested that the trial court deviate from the standard possession order's provisions relating to holiday and summer possession, she cannot complain on appeal that the trial court did what she asked it to do. *Philipp v. Tex. Dep't of Family & Protective Servs.,* No. 03-11-00418-CV, 2012 Tex. App. LEXIS 2760, at *20 (Tex. App.—Austin Apr. 4, 2012, no pet.) (mem. op.).

Mother additionally argues that the "weekly periods of possession for the older children, and the bi-weekly periods of possession of Craig have no starting date, so they are unenforceable, as ordered, constituting an abuse of discretion." We disagree. When the judge rendered the modification order at the conclusion of the final hearing on April 28, 2021, he ordered that Mother have the children on the weekend of April 30, and the weekly exchange begin on Sunday, May 2, at 6:00 p.m. Further, the order on modification provides in relevant part, "IT IS ORDERED that this Custom Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Custom Possession order." The order was signed on Tuesday, November 16, 2021. The first period of possession specified by the order was Mother's weekend possession of Craig which would begin on Friday, November 19, 2021, at 6:00 p.m. if she had possession of Carey and Chrissy; otherwise, Mother's period of

10

possession would begin "at 6:00 p.m. on the day the children are dismissed from school for the Thanksgiving holiday . . . ." We overrule Mother's complaint about the lack of a starting date for her periods of possession.

Viewing the entire record, we conclude that the trial court's modified order is supported by some evidence of a substantive and probative character. As such, the trial court did not abuse its discretion by modifying the 2017 decree of divorce. We overrule Mother's sole issue.

## CONCLUSION

Having considered the record before us and affording the deference to be given to the trial court's resolution of underlying facts and credibility determinations that may have affected its decision, we hold that the trial court acted within its discretion by modifying the conservatorship, terms and conditions, and visitation provisions of the decree of divorce. We affirm the judgment of the trial court.

Judy C. Parker
Justice

11