# Court of Appeals
## Tenth Appellate District of Texas

10-24-00031-CV

In the Interest of I.W.O., a Child

On appeal from the
474th District Court of McLennan County, Texas
Judge E. Alan Bennett, presiding
Trial Court Cause No. 2017-3767-6

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury determined that Father should be appointed sole managing conservator of I.W.O. with the exclusive right to designate his primary residence. The trial court incorporated the jury's verdict into a final judgment, and Mother appeals from that judgment. In two issues, Mother argues that (1) the trial court abused its discretion by refusing to permit I.W.O. to testify, and (2) the evidence is insufficient to support the jury's verdict that it is in the best interest of I.W.O. to reside with Father. We affirm.

## Background

Mother and Father married on November 20, 2004, and I.W.O. was born on December 29, 2008. The trial court signed a Final Decree of Divorce on October 4, 2018 that named Mother and Father as joint managing conservators of I.W.O. Mother was awarded the exclusive right to designate the primary residence of I.W.O. within 125 miles of the McLennan County Courthouse. Mother also had the exclusive right to (1) consent to medical, dental, and surgical treatment involving invasive procedures, (2) consent to psychiatric and psychological treatment, and (3) make decisions concerning I.W.O.'s education.

I.W.O. was diagnosed with autism when he was approximately two and a half years old. He has normal verbal skills and is able to communicate well with others. I.W.O. has issues with feeding and hygiene, and Mother and Father have opposing views on how to manage those issues. Mother homeschools I.W.O., and he attends a co-op for homeschool children one day a week. Mother and Father also disagree on I.W.O.'s educational environment. Another issue arose when Mother and Father disagreed over a major surgery to correct I.W.O.'s tibial torsion. Father was unsure that the surgery was medically necessary, while Mother wanted I.W.O. to have the surgery.

Sometime in early 2022, I.W.O. refused to have visitation with Father, which continued until the time of trial. On March 25, 2022, Father filed a petition to modify the parent-child relationship. Mother then filed a counterpetition in which she asked to be appointed as sole managing conservator of I.W.O. Father amended his petition to modify the parent-child relationship and requested that he be named the sole managing conservator of I.W.O.

A jury determined that Father should be appointed as I.W.O.'s sole managing conservator with the exclusive right to designate his primary residence. The trial court signed a judgment in accordance with the jury's verdict, and Mother appeals.

Issue One

In the first issue, Mother argues that the trial court abused its discretion by refusing to permit I.W.O. to testify at trial.

Standard of Review

We review the trial court's decision to admit evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005); *In re R.R.*, 711 S.W.3d 126, 136 (Tex. App.—Houston [1st Dist.] 2024, no pet.). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We may not reverse the trial

court's order unless we conclude that the evidentiary error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals. *See* TEX. R. APP. P. 44.1(a); *In re R.R.*, 711 S.W.3d at 136.

Applicable Law

Rule of Evidence 403 allows for the exclusion of relevant evidence if the probative value of the evidence is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. TEX. R. EVID. 403.

Discussion

After two days of testimony at trial, Mother stated that she intended to call I.W.O. to testify. Father objected under Rule 403 arguing that the testimony was unnecessarily cumulative. Mother maintained that the testimony was relevant because it went to the central issues in the case, which Mother's counsel characterized as I.W.O.'s desire as to who he wants to make decisions concerning his medical treatment and education. The trial court agreed that I.W.O.'s testimony should be excluded under Rule 403.

On the final day of testimony, Mother reurged her request to call I.W.O. to testify. Mother's counsel prepared a brief in support of her argument that

I.W.O. should be allowed to testify and read that brief on the record. Mother argued that Father failed to offer any basis for excluding the evidence under Rule 403 and that there was no explanation as to why I.W.O.'s testimony giving his personal opinion about who he wants to live with would confuse the jury. The trial court maintained its original ruling and excluded I.W.O.'s testimony.

Mother was allowed to call I.W.O. to make an offer of proof. I.W.O. stated that he is homeschooled by Mother and that he goes to the co-op one day a week. He said that he socializes with other children at the co-op and at church. I.W.O. testified that he is comfortable with his educational setting and that he wants to stay in that same setting. I.W.O. described that he has tibial torsion that causes pain when he walks or runs. He expressed his desire to have surgery to correct the tibial torsion.

I.W.O. further testified at the offer of proof that he made the decision to stop having visitation with Father in February 2022. He explained that Father would not help him with his hygiene issues and did not properly prepare his food. I.W.O. did not believe that Father would ever change and stated that he would not like to live with him.

Mother argues that when a child who is competent to testify is called as a witness, the trial court does not have discretion to refuse to permit the child to testify, citing *Callicott v. Callicott* as authority. 364 S.W.2d 455 (Tex. Civ.

App.—Houston 1963, writ ref'd n.r.e.). In *Callicott*, the Appellant father had custody of the eight-year-old child, and the Appellee mother sought to change the custody arrangement. *Id.* at 456. Appellant called the child as a witness and requested that the child be examined in open court or in chambers. *Id.* at 457. The trial court sustained Appellee's objection that the child was incompetent to testify. *Id.* The trial court did not interview the child in chambers to determine his competency and did not allow Appellant to make a bill of exceptions. *Id.* at 456.

On appeal, the court held that the trial court erred in refusing to grant Appellant's request to examine the child either in open court or in chambers. *Id.* at 457. The court noted that in chambers the trial court could have readily determined the qualifications of the child to testify. *Id.* The court stated that "[w]here a child of competent qualifications under the rules of evidence is called to testify, the trial court does not have within his discretion the right to refuse to permit such child to testify." *Id.* at 458.

In *Callicott*, the court of appeals noted that the trial court did not talk to the child and did not allow Appellant to properly prepare a bill of exceptions to show the child's qualifications to testify and what he would have testified to. *Id.* at 458. Unlike *Callicott*, in the case before us, the trial court did not exclude I.W.O.'s testimony based upon his competency. While the court in *Callicott*

stated that a trial court does not have the discretion to permit a child of competent qualifications to testify, the court did not hold that the Texas Rules of Evidence do not apply to a child's testimony. Therefore, we cannot conclude that *Callicott* stands for the proposition that a child's testimony is not subject to the rules of evidence.

However, even if the trial court erred in excluding I.W.O.'s testimony under Rule 403, Mother must show that the error probably caused the rendition of an improper judgment or probably prevented Mother from properly presenting the case to the court of appeals. *See* TEX. R. APP. P. 44.1(a); *In re R.R.*, 711 S.W.3d at 136. Mother must show that the excluded evidence was both controlling on a material issue and not cumulative of other evidence. *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex. 2000); *Greco v. Greco*, No. 04-07-00748-CV, 2008 WL 4056328, at *4 (Tex. App.—San Antonio Aug. 29, 2008, no pet.) (mem. op.). Evidentiary rulings are generally not harmful unless the case turns on the particular evidence in question. *Greco*, 2008 WL 4056328, at *4.

Mother was able to make an offer of proof as to I.W.O.'s excluded testimony. I.W.O. testified that he is comfortable in his current educational environment and that he wants to have surgery to correct the tibial torsion. I.W.O. further stated that he stopped visitation with Father and that he would

not like to live with Father. I.W.O.'s testimony was cumulative of other evidence heard by the jury.

The jury heard from numerous therapists, counselors, and health care providers that I.W.O. felt safe with Mother and preferred her over Father. One counselor asked Father not to show up to appointments unannounced because she felt like the sessions were not productive when Father was present.

The trial court appointed Dr. Daphne Ainslie as a custody evaluator for I.W.O. Dr. Ainslie interviewed both parents and I.W.O. She testified that I.W.O. was "clear in his mind that [Mother] was perfect and all good while [Father] was altogether horrible." The jury heard from Dr. Ainslie, Mother, and Father that I.W.O. had refused to attend visitation with Father since February 2022. Dr. Ainslie also testified that I.W.O. wanted to continue with his current educational environment. The jury heard further testimony that I.W.O. was doing well in his educational environment and was excelling at the co-op.

The jury heard considerable evidence on Mother and Father's disagreement on the surgery to correct I.W.O.'s tibial torsion. There was testimony that Father obtained a second opinion from a doctor at the Scottish Rite Pediatric Orthopedic Hospital who did not recommend surgery to treat I.W.O.'s tibial torsion. Mother testified that physical therapy would

strengthen I.W.O.'s muscles but would not correct the torsion in his legs. She believed surgery was necessary to correct the condition.

After reviewing the entire record, Mother has not shown that I.W.O.'s testimony was not cumulative of the other evidence presented. *See Greco*, 2008 WL 4056328, at *4. We cannot, on the record before us, determine that any error in refusing to allow I.W.O. to testify caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a); *Greco*, 2008 WL 4056328, at *4. We overrule Mother's first issue.

Issue Two

In her second issue, Mother argues that the jury's verdict and the trial court's finding in its final judgment that it was in I.W.O.'s best interest to reside with Father is legally insufficient.

Standard of Review

Because a trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession, we typically review a decision to modify conservatorship for an abuse of that discretion. *Epps v. Deboise*, 537 S.W.3d 238, 242 (Tex. App.—Houston [1st Dist.] 2017, no pet.). However, when there was a jury trial, the trial court may not contravene the jury verdict on the appointment of a sole managing conservator. *See* TEX. FAM. CODE ANN. § 105.002(c)(1)(A); *Douglas v. Douglas*,

No. 01-22-00568-CV, 2024 WL 117168, at *1 (Tex. App.—Houston [1st Dist.] Jan. 11, 2024, no pet.) (mem. op.). Instead, the jury's verdict is reviewed for legal and factual sufficiency. *Douglas*, 2024 WL 117168, at *1.

We will sustain a legal sufficiency or "no evidence" challenge if the record shows: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Douglas*, 2024 WL 117168, at *2. In our legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. If the evidence at trial enables reasonable and fair-minded people to differ in their conclusions, the jury must be allowed to do so. *Id.* A reviewing court cannot substitute its judgment for that of the jury, so long as the evidence falls within this zone of reasonable disagreement. *Id.*

Applicable Law

The party seeking to modify the parent-child relationship must show that (1) there has been a material and substantial change warranting the modification since the last order establishing conservatorship of the child and

(2) the modification would be a positive improvement for the child.  TEX. FAM. CODE ANN. § 156.101(a); *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000).

Discussion

Mother and Father filed competing petitions to be named sole managing conservator of I.W.O.  Both allege that the circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified.  Therefore, the first element on modification is not at issue here.  Because Mother alleged in her counterpetition that circumstances relevant to the appointment of a conservator and the terms of the conservatorship had materially and substantially changed, she judicially admitted the first element.  *Douglas*, 2024 WL 117168, at *2 (citing *In re A.N.G.*, 631 S.W.3d 471, 479–80 (Tex. App.—El Paso 2021, no pet.)) ("In a modification proceeding, if both parties' claims contain the common essential element of changed circumstances ..., one party's allegation that the essential element is met constitutes a judicial admission.").  Consequently, Mother may not challenge the sufficiency of the evidence supporting a material and substantial change.  *Douglas*, 2024 WL 117168, at *2.

Therefore, we will consider the second element, whether modification is a positive improvement for I.W.O.  Father maintains that Mother poisoned

I.W.O.'s mind against him. Poisoning a child's mind against a parent is not in the child's best interest and can be a guiding consideration in making possession and access determinations. *See Allen v. Allen*, 475 S.W.3d 453, 458 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Father testified that while I.W.O. previously enjoyed his time with Father, visitation with I.W.O. ended in February 2022. He stated that Mother undermines his relationship with I.W.O. and opposes his presence in I.W.O.'s life. According to Father, Mother prevented him from going to I.W.O.'s therapy appointments and interfered with his access to I.W.O.'s medical care.

Dr. Ainslie also opined that Mother does not encourage a positive relationship between I.W.O. and Father. In addition to her interviews with I.W.O. and the parents, Dr. Ainslie conducted psychological testing on both parents and reviewed numerous medical and court records. She talked to many of I.W.O.'s therapy providers and other family members.

Dr. Ainslie testified that a CPS investigator observed that Mother encourages I.W.O. to resent Father. The investigator further noted that Mother blames Father for I.W.O.'s distress and physical problems and encourages I.W.O. to blame Father as well. Dr. Ainslie testified that many of I.W.O.'s professional providers reported concerns about Mother's influence on I.W.O. As an example, Mother told I.W.O. to keep a journal when he was with

Father in order to have documented evidence to hold up in court. One therapist told Dr. Ainslie that she did not allow Mother and I.W.O. to sit together while in sessions because they conspired together.

Dr. Ainslie offered further testimony that relates to a positive improvement for I.W.O. She stated that I.W.O. appears to be coddled by Mother, and she said several professionals agreed with that assessment. Dr. Ainslie opined that Mother infantilized I.W.O. and that it has contributed to his lack of development and his disdain for Father. Dr. Ainslie further determined that Mother has acted to stifle I.W.O. and limit his development. She concluded that Mother's "primary caregiving of [I.W.O.] has not resulted in his having a life independent of her, even for a child on the autism spectrum."

Dr. Ainslie testified that I.W.O.'s providers believed that he should have made more progress in feeding and hygiene. There was evidence that Father encouraged I.W.O. to be more independent in feeding and hygiene. According to Dr. Ainslie, Father has worked very hard for I.W.O. to have a more mainstream experience.

Dr. Ainslie determined that Mother's "dependence on [I.W.O.] represents an emotional danger to him." She stated that I.W.O. has lost the benefit of a relationship with Father. Dr. Ainslie testified that in order to ensure I.W.O.

has a relationship with both parents, I.W.O. should primarily reside with Father.

After reviewing the evidence in the light most favorable to the verdict, we conclude that the jury's finding that Father should be appointed as sole managing conservator of I.W.O. is supported by legally sufficient evidence. We overrule Mother's second issue.

## Conclusion

Having overruled both of Mother's issues on appeal, we affirm the trial court's judgment.

_____
MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: May 14, 2026

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed
CV06

