# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00511-CV

---

**Kasey Cobb, Appellant**

**v.**

**Paul Dennis, Appellee**

---

### FROM THE 169TH DISTRICT COURT OF BELL COUNTY
### NO. 286441, THE HONORABLE CARI L. STARRITT-BURNETT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Kasey Cobb appeals the trial court's order modifying a divorce decree to give Paul Dennis the exclusive right to designate the primary residence of their two minor children. In one issue, Cobb complains that the trial court abused its discretion by determining that the modification was in the children's best interest. We will affirm.

## BACKGROUND

Cobb and Dennis are the parents of six children; "April," "Bill," "Carol," "Daniel," "Edward," and "Frank."[1] When Cobb and Dennis divorced in February 2017, they were appointed joint managing conservators of all six children, and Cobb was designated as the conservator with the exclusive right to designate the children's primary residence with no

---

[1] To protect the children's privacy, we refer to them using pseudonyms. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.9.

geographic restriction. The decree ordered that "possession and access will be mutually agreed between the parties." The decree awarded Cobb the marital home in Salado and ordered Dennis, who lived in Round Rock, to pay the balance of the payments due on the promissory note secured by the home.

In October 2018, Dennis filed a petition seeking to modify the conservatorship provisions of the divorce decree, alleging that "the circumstances of the children, a conservator, or other party affected by the order to be modified have materially and substantially changed" and requesting that the court order possession and access "in accordance with the Texas Family Code Standard Possession Order." On December 20, 2018, Cobb and Dennis signed a mediated settlement agreement providing that Dennis would have possession and access to the children pursuant to the Standard Possession Order.

In February 2020, Dennis sought a temporary restraining order in which he asked the court to order that Cobb's current husband, Kevin Cobb (Kevin), be "excluded from possession of or access to" Bill, Carol, Daniel, Edward, and Frank[2] and "requiring the exclusion" of Kevin from Cobb's house in Salado. In support of this motion, Dennis attached his affidavit, in which he attested that he learned in December 2018 that Kevin had assaulted Bill in the Salado home and had then prevented Cobb from calling 911 to report the assault by breaking her phone; that he understood that Kevin had moved out of the house after the assault; and that although he had believed that Cobb was protecting the children from Kevin, he had since learned that Kevin may have moved back into the Salado home. Dennis further attested that he feared that the children were not safe being in the same home as Kevin. On February 13, 2020, the court signed a temporary restraining order prohibiting Kevin from having any contact with the

---

[2] By the time the petition was filed, April was no longer a minor.

children or being within 1,000 feet of the children, their respective residences, or their respective schools. The order stated that the temporary restraining order was effective until February 28, 2020, and set a hearing for February 25 on Dennis's request that the temporary restraining order become a temporary injunction until further court order.[3]

In February 2020, Dennis also filed an amended motion to modify the conservatorship provisions of the divorce decree, seeking the exclusive right to designate the primary residence of the five minor children. On March 6, 2020, Dennis requested that the court sign a temporary order designating him as the conservator with the "temporary exclusive right" to designate the children's primary residence and enjoining Kevin from being in contact with the children or coming within 1,000 feet of their residence or school. Dennis filed a supporting affidavit describing an argument between Carol and Cobb after which Carol came to live with Dennis. On March 9, 2020, the court appointed Carey Casey as the children's guardian ad litem. On March 10, 2020, the court signed an agreed temporary order appointing Cobb and Dennis the children's joint managing conservators; giving Dennis the "temporary exclusive right" to designate the primary residence of Bill and Carol; giving Cobb the "temporary exclusive right" to designate the primary residence of Daniel, Edward, and Frank; and ordering that Cobb "ensure that the children are not left unsupervised in the presence of Kevin."

The court set Dennis's amended motion to modify the conservatorship provisions of the divorce decree for a hearing on October 27, 2022. By that time, Dennis was seeking primarily to be designated the joint managing conservator with the exclusive right to designate

---

[3] The record does not contain documents indicating whether the hearing was held, nor does it include a signed temporary injunction.

3

nine-year-old Edward and seven-year-old Frank's primary residence.[4]  After the hearing, the court found that there had been "a material and substantial change of circumstances" since the final divorce decree had been entered and that "it would be in the best interest of the remaining two children to reside with" Dennis.  The court ordered that the children be "exchanged to [Dennis] on or before October 28, 2022" and that Cobb should thereafter have possession and access consistent with the Texas Family Code's standard possession order.  The court directed Dennis's counsel to prepare an order reflecting her ruling.  When counsel for Dennis failed to do so, counsel for Cobb prepared and filed a proposed final order on April 12, 2023, and the court set a hearing on Cobb's motion for entry of the final order for August 16, 2023.  The court signed the final order granting Dennis's motion to modify the conservatorship provision of the divorce decree on the date of the entry hearing.  Although Cobb requested findings of fact and conclusions of law, the trial court failed to file them.  This appeal followed.

## DISCUSSION

In one issue on appeal, Cobb contends that the trial court abused its discretion in modifying the divorce decree to "grant primary custody of the parties' two youngest children to Dennis."  Specifically, Cobb maintains that there was legally insufficient evidence to show that "modification would be a positive improvement for the children."  Cobb argues on appeal that, to modify conservatorship of Edward and Frank, Dennis was required to demonstrate that doing so "was going to be a positive improvement" for the children and, because the record does not, in her view, contain any such evidence, the trial court abused its discretion in ordering that Edward and Frank reside with Dennis rather than with Cobb.  To support this assertion, Cobb cites to

---

[4]  By October 2022, Edward and Frank were the only two minor children.

4

*In re V.L.K.*, in which the supreme court stated that "any person who seeks to modify an existing custody order must show (1) changed circumstances and (2) that modification would be a positive improvement for the child."  24 S.W.3d 338, 342 (Tex. 2000) (citing former Texas Family Code section 156.101, which required showing of material and substantial change and that "the appointment of the new sole managing conservator would be a positive improvement for the child").  Effective 2001, however, the Legislature amended section 156.101 to eliminate the language regarding "positive improvement."  *See* Act of May 22, 2001, 77th Leg., R.S., ch. 1289, § 5, 2001 Tex. Gen. Laws 3108, 3109 (codified at Tex. Fam. Code § 156.101).  Under the current version of the statute, a trial court can modify the terms of a conservatorship order if (1) the child's or parties' circumstances have materially and substantially changed since the order was rendered and (2) doing so would be in the child's best interest.  *Abila v. Miller*, 683 S.W.3d 842, 847 (Tex. App.—Austin 2023, no pet.) (citing Tex. Fam. Code § 156.101(a)(1)).  Thus, we will consider whether there was legally sufficient evidence to support the trial court's determination that modification of the final divorce decree was in Edward and Frank's best interest.

We review the trial court's modification order for a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).  The test for an abuse of discretion "is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford*, 801 S.W.2d at 109 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).  "To determine whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which

to exercise its discretion and whether it erred in its exercise of that discretion." *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.).

Under this standard, sufficiency of the evidence is not an independent ground of error but is a factor in determining whether the trial court abused its discretion. *Zeifman*, 212 S.W.3d at 587. When conducting a legal sufficiency review, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). To prevail, an appellant must show that no more than a scintilla of evidence supports a finding on which the opponent had the burden of proof. *See Waste Mgmt. of Tex., Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156-57 (Tex. 2014); *City of Keller*, 168 S.W.3d at 826. More than a scintilla of evidence exists to support a finding when the evidence enables reasonable and fair-minded people to differ in their conclusions. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). When the record contains some evidence of a substantive and probative character supporting the trial court's decision, there is no abuse of discretion. *Tuan Anh Tran v. Nguyen,* 480 S.W.3d 119, 128 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Zeifman,* 212 S.W.3d at 587.

In a modification proceeding, the party seeking modification has the burden to establish, by a preponderance of the evidence, that the requested modification is in the child's best interest. *Zeifman*, 212 S.W.3d at 589. The child's best interest "shall always be the primary consideration of the court in determining the issues of conservatorship and possession and access to the child." Tex. Fam. Code § 153.002. In determining whether such a showing has been made, courts should consider the non-exhaustive list of factors discussed in *Holley v. Adams*, which include the desires of the child, the emotional and physical needs of the child now and in

6

the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, the plans for the child, the stability of the home, the acts or omissions of the parent that may indicate that the existing relationship is not a proper one, and any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371-72 (Tex. 1976).

During trial, the court heard the testimony of seven witnesses—three of Cobb and Dennis's children, two of Kevin's former spouses, Kevin, and the children's guardian ad litem. Daniel, Cobb and Dennis's fourth oldest child, who was 18 years old at the time of trial, testified about an incident that took place at Cobb's home in December 2018. Daniel stated that he and his sister were told by Cobb that they could stay up past their 8:00 p.m. bedtime to watch a movie. While he and his sister were watching the movie, Daniel heard Cobb yelling at Kevin, he heard something break, and the movie "cut off." Daniel stated that Kevin had smashed the home's internet router, and that Kevin and Cobb were arguing. Daniel did not want to be involved in Kevin and Cobb's argument and went to his room and closed the door. Daniel testified that 15 minutes later he heard continued yelling and "stuff breaking" and that his older brother Bill, who was then 16 years old, ran into his room looking "absolutely terrified." Bill closed the bedroom door and Kevin stood outside the door yelling. Daniel recounted that Kevin then punched a hole through the door, ripped part of the door off, and yelled at them through the broken door to go to bed. Daniel stated that he waited in the room until he believed it was safe to come out, and that he and Bill then went to their sister April's room and called the police. Daniel stated that this incident frightened him, that Kevin and Cobb got into arguments during which they yelled at each other once or twice a month, and that Kevin had "been violent" at times before the incident. Daniel testified that he talked to Cobb about the incident but could not

7

recall what she said about it. Daniel stated that he did not believe that Edward and Frank were safe being around Kevin. Daniel, who was living with Dennis at the time of trial, testified that he sees Edward and Frank when they come to visit Dennis and that he sometimes goes to Cobb's house to visit them. Daniel stated that although he did not see Kevin physically assault Bill, he is still scared of Kevin. Daniel has been over to Cobb's house and has seen Kevin there, but they have not spent time alone with Kevin nor have they spoken about the December 2018 incident. Daniel testified that Kevin currently homeschools Edward and Frank and that he has not heard Cobb and Kevin argue since the incident. Daniel stated that he has a "decent" relationship with Cobb but that it concerns him that she continues to be in a relationship with Kevin. Daniel expressed his concern that Cobb is potentially putting her youngest children in danger by continuing her relationship with Kevin. Daniel stated that he had told the children's guardian ad litem that he had these concerns and that he was afraid of Kevin and that the guardian ad litem did not advise him about how to assuage those fears.

Carol, Cobb and Dennis's third oldest child, who was 19 years old at the time of trial, testified about the incident that took place in December 2018, when she was 15 years old. Carol stated that she and her brother were up past their regular bedtime, which "made Kevin mad." Carol testified that Kevin cut off the internet, came out of his room, and started yelling at Cobb. Kevin yelled at Carol to "go to bed" so she ran to her room. Carol stated that she then heard Kevin yelling at her brother, Bill, and when she came out of her room, she saw Cobb, Kevin, and Bill running around in the yard. Carol saw Bill standing in front of the door to her room with Cobb in front of him when Kevin reached around Cobb and hit Bill in the throat. Carol testified that Cobb and Kevin then went downstairs, Bill went back outside, and then Cobb and Bill came back upstairs; Bill called the police. Cobb went back downstairs and returned

8

with Daniel and then the police arrived and arrested Kevin. Carol said that Edward and Frank were asleep in their room and, as far as she knows, did not witness the events of that evening. Carol stated that the incident was frightening and that when she first discussed the incident with Cobb, her mother said she was afraid but that they never talked about it again. Carol testified that Kevin moved out of the house and that she did not know when he had moved back in.

Carol, who was living with Dennis at the time of trial, stated that she sees Kevin when she goes to Cobb's house approximately twice a month, but that she rarely talks to him and is afraid of him. Carol stated that she is concerned about Edward and Frank living with Kevin and does not think it is in their best interest to live at Cobb's house with Kevin there. Carol testified that she finds it "odd" that there have not been any further arguments or incidents involving Kevin and expressed her belief that they could occur in the future. Although Carol has expressed her concerns to Cobb, she and Cobb "rarely" talk about what happened in December 2018. Carol stated that Kevin takes care of Edward and Frank while Cobb is at work during the day and that she is concerned that the two boys are alone with him. Carol agreed that Edward and Frank appear to be happy and do not appear to be malnourished or distraught. When asked why the children moved to Dennis's house when they graduated from high school, Carol answered that "we were afraid of Kevin" and wanted to get away from him.

April, Cobb and Dennis's oldest child, who was 22 years old at the time of trial, testified that she currently lives with Cobb and Kevin. April, who was 18 years old in December 2018, stated that she was not at home the night that Kevin hit Bill. April stated that Cobb told her that she and Kevin had gotten into a fight that night, that Kevin had been drinking, that Kevin chased Bill, and that Kevin "disrupted their attempts to call 911." April denied seeing a broken door or any other physical damage to the house. April stated that she gets along with Kevin "for

9

the most part" and is not afraid of Kevin or concerned about Edward and Frank's safety in the home. April testified that Cobb and Kevin have argued recently with raised voices but not screaming or yelling. April also stated that she has not seen any aggressive behavior by Kevin and has not seen him threatening Cobb or her siblings.

Jessica Cooper, Kevin's former spouse, testified that they were married for three years and that although there was no physical violence, there were "words and cornering me against a wall and pointing fingers in my face." Cooper stated that Kevin had "anger issues" that she attributed to his use of steroids. Cooper testified that, after their divorce, she avoided having contact with Kevin or his family, that she has not had contact with him recently, and that she would be concerned about him being around children.

Kristen Whisenhunt, Kevin's former spouse, testified that they were married from 2010 to 2014. Whisenhunt stated that Kevin showed signs of aggression during their marriage but was never physically violent toward her. In 2013, Kevin threatened her and broke down a door in the home. She also recounted an incident when Kevin got "very drunk" and was going to go somewhere on his brother's motorcycle. When Whisenhunt took the keys and locked herself in her bedroom, he broke the door down trying to get the keys from her. Again in 2013, while she and Kevin were at a concert, Kevin threw a beer at her when she told him that he could not have any more drinks. Whisenhunt stated that on their way home from the concert, Kevin started screaming at her and jumped out of the car as they were driving on the highway. Whisenhunt described another incident in 2013 when Kevin picked up their four-year-old son, held him over the banister, and threatened to drop him as punishment for the child having pushed one of their cats down the stairs. Whisenhunt described Kevin as "charismatic," "manipulative," and as

10

someone who is violent when he does not get his way and who "screams and degrades you" until he gets what he wants.

Whisenhunt testified that in December 2018, Cobb called her and told her about Kevin assaulting Bill at their home. Cobb told Whisenhunt that Kevin had gone upstairs to go to sleep and that the children were watching a movie. Cobb told her that Kevin came downstairs, that she could smell alcohol on his breath, and that he started yelling and saying that the children were being too loud. Cobb recounted that when Bill stepped in and told Kevin to stop yelling at his siblings, Kevin punched him in the throat. Whisenhunt testified that Cobb told her that Kevin broke her phone when she tried to call 911, that he broke down a door to a bedroom, and that her daughter called 911. Whisenhunt testified that she was not surprised by Cobb's description of the incident and that she did not think Edward and Frank were safe in the home with Kevin. Whisenhunt stated that she believes similar incidents could happen in the future, especially when the two boys get older and try to "stand up for themselves or talk back." Whisenhunt stated that Kevin has a pattern of violent behavior and that she is "scared and worried about the children that are in that house" and that Cobb may not be able to protect them.

Kevin testified at trial that he moved out of Cobb's house and the two were separated for approximately one year after the December 2018 incident. Kevin stated that since then he and Cobb have gone through counseling, attend church together, and read books together, and that he has moved back into Cobb's house. Kevin testified that he has followed the direction of the guardian ad litem to participate in family counseling. Kevin stated that because of this he is not a danger to Edward or Frank. Kevin expressed regret for what happened and that he "does something about it every Tuesday" at an "overcomers" class at his church, looking for "roots that aren't producing fruit." Kevin stated that he was not a good example "that one time,"

11

that it "was not his proudest moment," and that he now tries to lead by example. Kevin and Cobb have "family night" every night with the children, hold themselves accountable, and "are an example to the kids." Kevin testified that he has not been told he is a danger to the children, nor has he been contacted by law enforcement or Child Protective Services. He described his relationship with Daniel as "good" and testified that they have conversations and that they have "prayed together after we had a good talk together." Kevin stated that he can think of no reason why any of the children might say that they are afraid of him. When asked if he would be surprised to know that Daniel and Carol testified that they were afraid of him, Kevin stated: "I think they were here this last week and we were all here together and we had eaten together." Kevin stated that he was very surprised that they testified that they were afraid of him "because they are [at Cobb's house] all the time" and that they have normal interactions with him and have never mentioned that they are fearful of him.

When asked about his former spouses, Kevin denied having threatened or assaulted them. Kevin denied throwing a beer at Whisenhunt and stated that he never jumped out of a moving car. Although he admitted breaking down a door at his house in 2013, he stated that he did so because Whisenhunt was not responding to him, and that he broke into the room to make sure she was alright. Kevin stated that although Child Protective Services investigated his and Whisenhunt's home "due to allegations about" their children, nothing came of it, and he was not arrested for assaulting Whisenhunt nor was he arrested or charged with child endangerment or abuse or neglect. Kevin denied having ever taken steroids and denied that he had been drinking alcohol on the night he assaulted Bill. Kevin stated that he received deferred adjudication for the assault and had to pay a fine. He denied coercing Bill into signing documents to get the assault charge dismissed. Kevin testified that he has lived with Cobb for

12

four years and that, since December 2018, there have been no incidents involving law enforcement or Child Protective Services, no one has told him that his behavior is inappropriate, and no accusations have been made against him in the past 16 months.

Finally, the court heard testimony from Carey Casey, the children's guardian ad litem. Casey testified that she has talked to the children and that in the last 16 months no one has told her of any problem in either Cobb's or Dennis's home and that she thought everything was going well. The children's therapist has reported that the children are doing well in both homes, other than "a few normal sibling issues." Casey stated that Edward and Frank are happy, had a great summer, and spent good vacations with Cobb and Dennis. Casey expressed no concerns about either Cobb or Dennis, recommended that Edward and Frank continue to live primarily with Cobb, and that visitation remain the same because of the distance between Cobb's and Dennis's houses. Casey stated that if the parents lived closer together, she would recommend that they spend more time with Dennis.

A trial court has broad discretion to decide the best interest of children in matters involving custody, visitation, and possession. *Allen v. Allen*, 475 S.W.3d 453, 458 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The trial court is best able to observe and assess the witnesses' demeanor and credibility and to sense what may not be apparent merely from reading the record on appeal. *Id.* Therefore, we defer to the trial court's resolution of underlying facts and to credibility determinations that may have affected its decision and should not substitute our judgment for that of the trial court. *Id.*

In support of her contention that the trial court abused its discretion in determining that Edward and Frank should reside primarily with Dennis, Cobb argues that (1) Edward and Frank have no idea what Kevin did to Bill and that "all that they know is that

13

they are having a good, happy life with their mother and her new husband;" (2) transferring custody to Dennis would mean "tearing them away from their homeschooling teacher;" (3) the guardian ad litem recommended no change to Edward and Frank's living arrangements; and (4) the older siblings, who say they are afraid of Kevin, spend time at Cobb's home and have not witnessed any inappropriate behavior by Kevin. Cobb also emphasizes evidence that Kevin has "taken control of his life" and spends "a lot of time in counseling and in church sessions improving himself and attempting to ensure that nothing like [the December 2018] incident will ever occur again."

As set forth in detail above, the record reveals that there was evidence to support the trial court's decision. There was evidence of numerous incidences of Kevin's threatening and aggressive behavior, culminating in a physical assault of a 16-year-old boy. Although Kevin testified that he regretted the incident and was working to improve himself, he also denied having behaved in an aggressive and threatening manner toward Cooper and Whisenhunt, denied ever using steroids, and denied drinking alcohol the night he assaulted Bill; all of those denials were contradicted by other witnesses at trial. Kevin's account of his relationship with the older children was also inconsistent with their own descriptions of that relationship. The trial court could have determined that, despite his efforts, Kevin did not acknowledge or hold himself responsible for inappropriate conduct and that he failed to recognize the lasting impact of his assault of Bill on the older children. There was evidence that both Cobb's home and Dennis's home were comfortable and happy places for Edward and Frank as well as evidence supporting a determination that Edward and Frank's best interest would be served by spending time primarily at Dennis's home, particularly during the week when Cobb is at work and the children would be home alone with Kevin. The trial court could reasonably have concluded, based on the evidence

14

presented, that Kevin's presence in Cobb's home had a potentially negative impact on Edward and Frank, particularly as they grow older.

Indulging every reasonable inference that would support the trial court's finding, we conclude that the trial court had sufficient evidence to support its decision. The court did not act unreasonably, arbitrarily, or without reference to any guiding rules or principles by determining that Dennis should have the right to determine the children's primary residence; therefore, the trial court did not abuse its discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

## CONCLUSION

Having concluded that the trial court did not abuse its discretion in determining that modification of the final divorce decree was in the children's best interest, we overrule Cobb's sole issue and affirm the trial court's order.

_____

Karin Crump, Justice

Before Justices Triana, Kelly, and Crump

Affirmed

Filed: February 26, 2025

15